IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LISA CRISTIA, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 22 CV 1788 |
| v. | ) ) | Judge Robert W. Gettleman |
| TRADER JOE'S COMPANY, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION & ORDER

Plaintiff Lisa Cristia, on behalf of herself and other similarly situated individuals, brings this complaint against defendant Trader Joe's Company for alleged violations of consumer protection law. Plaintiff asserts claims under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, and the Magnuson Moss Warranty Act, 15 U.S.C. § 2301, in addition to other state consumer protection statutes. Plaintiff also asserts various common law claims. Defendant disputes all claims and brings the instant motion to dismiss plaintiff's complaint for failure to state a claim and lack of standing (Doc. 5, 6). In support of its motion to dismiss, defendant requests that the court take judicial notice of a public service announcement ("PSA") by the United States Food and Drug Administration ("FDA") (Doc. 7). For the reasons stated below, the court takes judicial notice of the FDA's PSA and grants defendant's motion to dismiss.

## BACKGROUND

Defendant is a grocery store chain that manufactures, labels, markets, and sells a variety of food products under its Trader Joe's brand. Plaintiff is concerned with a particular juice product that is labeled "Cold Pressed" ("the juice product"). According to plaintiff, defendant

1

sells the juice product in the produce section of its stores, "in proximity to fresh fruit and vegetable products, which gives consumers the impression that it is freshly made, and reinforces the statement of 'cold pressed juice.'"

Plaintiff explains that the term "cold press" refers to various pressing methods that use physical pressure to extract juice. She emphasizes that the "cold press" method does not involve cold temperatures. Instead, the term distinguishes juices made by pressure from juices made from a centrifugal juice machine, "which is similar to a blender." Plaintiff claims that "[m]any consumers believe that juice made through a centrifugal machine causes an increase in temperature, which does not occur when juice is made through a pressing method."

According to plaintiff, consumers understand the label "cold pressed juice" to mean something other than defendant's juice product. Plaintiff alleges that consumers understand "cold pressed juice" to refer to juice "which was extracted from fruits and vegetables and not processed or subjected to any form of preservation beyond being 'squeezed' or 'pressed.'" In contrast, the juice product's side label states, "We source fresh vegetables and fruits and extract the juices through a hydraulic press. We then use a cold water pressure method called HPP (high pressure processing) to maintain the safety of the juice and the quality of flavor." Plaintiff claims that defendant "makes other representations and omissions with respect to the Product which are false and misleading."

The undisputed fact that the juice product is subject to additional processing after being cold pressed is central to plaintiff's concern with the juice product's front label. Plaintiff claims that "[r]easonable consumers must and do rely on a company to honestly and lawfully market and describe the components, attributes, and features of a product, relative to itself and other comparable products." According to plaintiff, if plaintiff and the putative class members had

known "the truth" about the juice product's processing after being cold pressed, "they would not have bought the Product or would have paid less for it." Defendant sells the juice product for approximately $3.39 per 15.2 oz., which plaintiff claims is higher than similar products that are labeled differently, in addition to higher than it would be sold without the allegedly misleading representations and omissions on its front label.

On August 22, 2022, defendant filed the instant motion to dismiss plaintiff's claims. Defendant concurrently requested that the court take judicial notice of a PSA by the FDA. The PSA is entitled, "What You Need to Know About Juice Safety," and is publicly accessible on the FDA's official website at https://www.fda.gov/food/buy-store-serve-safe-food/what-you-need-know-about-juice-safety. Defendant emphasizes that the PSA explains that "[j]uices provide many important nutrients, but consuming untreated juices can pose health risks to your family." For example, the PSA elaborates that "[w]hen fruits and vegetables are fresh-squeezed or used raw, bacteria from the produce can end up in your juice or cider. Unless the produce or the juice has been pasteurized or otherwise treated to destroy any harmful bacteria, the juice could be contaminated." Ultimately, the PSA states that "[m]ost of the juice sold in the United States is pasteurized (heat-treated) to kill harmful bacteria," and "[j]uice products may also be treated by non-heat processes for the same purpose."

## LEGAL STANDARD

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must allege sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), citing Fed. R. Civ. Pro. 12(b)(6). For a claim to have "facial plausibility," a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "[W]here the well-pleaded

facts do not permit the court to infer more than the possibility of misconduct, the complaint has

alleged—but has not shown—that the pleader is entitled to relief." Id. "Threadbare recitals of

the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

Claims involving fraud, such as deception claims under the ICFA, are subject to a

heightened pleading standard set forth in Rule 9(b). Fed. R. Civ. Pro. 9(b); Camasta v. Jos. A.

Bank Clothiers, Inc., 761 F.3d 732, 736 (7th Cir. 2014). Rule 9(b) requires that the plaintiff

"state with particularity the circumstances constituting fraud." Fed. R. Civ. Pro. 9(b). The

Seventh Circuit has interpreted the 9(b) standard to require a plaintiff to "describe[e] the who,

what, when, where, and how of the fraud." Anchorbank, FSB v. Hofer, 649 F.3d 610, 615 (7th

Cir. 2011).

## DISCUSSION

Plaintiff primarily brings claims under state law, with most claims under Illinois law. As

a federal court reviewing the case under diversity jurisdiction, this court evaluates plaintiff's

claims pursuant to Illinois state law as the Illinois Supreme Court would review them. See

Nationwide Agribusiness Ins. Co. v. Dugan, 810 F.3d 446, 450 (7th Cir. 2015). At the outset,

the court also emphasizes that both parties have an obligation to engage in litigation with

professional civility and admonishes both parties to keep this obligation in mind.

Next, the court dismisses plaintiff's request for injunctive relief for lack of standing. The

court addresses standing concerns before it considers the merits of any claim. To establish

standing in federal court, a plaintiff must allege an injury in fact that is actual or imminent,

concrete and particularized. See Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992). "[T]o

establish injury in fact when seeking prospective injunctive relief, a plaintiff must allege a real

and immediate threat of future violations of their rights." Scherr v. Marriott Int'l, Inc., 703 F.3d

1069, 1074 (7th Cir. 2013) (internal quotations omitted). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects." Lujan, 504 U.S. at 564 (internal quotations omitted).

In this case, the parties do not dispute that plaintiff has standing to bring her claim for monetary damages, but her claim for injunctive relief is problematic. Plaintiff alleges that she is entitled to injunctive relief because she intends to purchase the juice product again but is "unable to rely on [its] labeling and representations," as well as the labels of "other similar fruit juice products." The court agrees with defendant that plaintiff cannot establish standing for injunctive relief based on such an allegation. Because plaintiff now knows that the juice product is processed after being cold pressed, she is unlikely to be harmed by defendant's packaging in the same way in the future. See, e.g., Ulrich v. Probalance, Inc., No. 16 C 10488, 2017 WL 3581183, at *7 (N.D. Ill. Aug. 18, 2017).

The court then moves to the merits. First, the court grants defendant's request for judicial notice of the FDA's PSA entitled, "What You Need to Know About Juice Safety." Judicial notice is governed by Federal Rule of Evidence 201(b). Under Rule 201(b), courts may take judicial notice of adjudicative facts that are not subject to reasonable dispute. F.R.E. 201(b). An adjudicative fact is not subject to reasonable dispute when it is either generally known within the trial court's territorial jurisdiction, or when it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. F.R.E. 201(b). The court agrees with defendant that "[c]ourts routinely take judicial notice of the information on official government websites," such as the PSA in the instant case, because they are not subject to reasonable dispute. See, e.g., Denius v. Dunlap, 330 F.3d 919, 926–27 (7th Cir. 2003).

Next, the court considers defendant's motion to dismiss plaintiff's complaint for failure

to state a claim. Plaintiff asserts a variety of claims, including: (1) violation of the ICFA for deceptive representations and omissions; (2) violations of other consumer fraud statutes on behalf of a multi-state class; (3) breach of express warranty, breach of the implied warranty of merchantability and fitness for a particular purpose, and violation of the Magnuson Moss Warranty Act; (4) negligent misrepresentation; (5) fraud; and (6) unjust enrichment. The court separately evaluates each claim.

The court begins by granting defendant's motion to dismiss plaintiff's claim under the ICFA, 815 ILCS 505/1, for deceptive representations and omissions on the juice product's front label. In this claim, plaintiff complains that defendant violates Illinois consumer protection law by deceptively labeling its juice product as "cold pressed juice." She alleges that there is a difference between "juice that is cold pressed," which means juice that is extracted via the cold press method, and "cold pressed juice," which means juice that is extracted via the cold press method without any additional processing. Specifically, plaintiff claims that the juice product's label is deceptive because she "believed the Product was not processed after being cold pressed, based on the front label, its placement within the store, and prominent statements on similar products which disclosed how they were processed," like labels that notify consumers that the product was "pasteurized." She claims that this alleged deception is material because she and class members would not have purchased the juice product or paid as much for it "if the true facts had been known."

Conversely, defendant argues that plaintiff has not met her burden to plausibly allege deceptive labeling or marketing under the ICFA. To prevail on a claim under the ICFA, a plaintiff must show: (1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) that the unfair or

deceptive practice occurred during a course of conduct involving trade or commerce.  See Siegel v. Shell Oil Co., 612 F.3d 932, 934 (7th Cir. 2010).  To successfully plead a claim that rests on allegations of deceptive conduct, a plaintiff must meet the heightened pleading burden under Rule 9(b).  See, e.g., Vanzant v. Hill's Pet Nutrition, Inc., 934 F.3d 730, 738 (7th Cir. 2019).  Where the challenged representation is not misleading as a matter of law, the complaint is subject to dismissal at the pleading stage.  See Bell v. Publix Super Markets, Inc., 982 F.3d 468, 482 (7th Cir. 2020).

A practice is deceptive "if it creates a likelihood of deception or has the capacity to deceive."  Bober v. Glaxo Wellcome PLC, 246 F.3d 934, 938 (7th Cir. 2001).  Courts apply a "reasonable consumer" standard to examine the likelihood of deception.  See Benson v. Fannie May Confections Brands, Inc., 944 F.3d 639, 646 (7th Cir. 2019).  This standard requires a probability that a significant portion of the general consuming public or targeted consumers, acting reasonably under the circumstances, could be misled.  See Bell, 982 F.3d at 474–75.  Relevant circumstances include "all the information available to consumers and the context in which that information is provided and used."  Id. at 477.  "[W]here plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising, dismissal on the pleadings may well be justified."  Id.

Thus, in the instant case, plaintiff's ICFA claim depends on whether reasonable consumers would think that the "cold pressed juice" label on the front of the juice product suggests that the product is not subject to further processing.  Plaintiff does not provide specific factual allegations for any other deceptive representations.  A complicating factor is whether the juice product's side label, which expressly states that the juice product is processed, makes plaintiff's interpretation of the front label unreasonable under the circumstances.  Another factor

is whether reasonable consumers would be aware that juice is routinely processed to avoid contamination, as described in the judicially noticed PSA.

The Seventh Circuit's reasoning in <u>Bell v. Publix Super Markets, Inc.</u>, 982 F.3d 468 (7th Cir. 2020), is instructive. In <u>Bell</u>, the court held that the plaintiffs stated a claim for consumer fraud when they alleged harm under a front label that read "100% Grated Parmesan Cheese" when the product contained 4–9% cellulose powder and potassium sorbate. <u>Id.</u> at 473–74. The fact that the back label accurately reflected the additional ingredients was not enough for the district court to dismiss the plaintiffs' claim as a matter of law because the plaintiffs alleged that consumer surveys showed that 85–95% of consumers understood "100% Grated Parmesan Cheese" to mean that the product contains only cheese, not additives. <u>Id.</u> at 480, 482. The court emphasized that consumer protection laws "do not impose on average consumers an obligation to question the labels they see and to parse them as lawyers might for ambiguities, especially in the seconds usually spent picking a low-cost product." <u>Id.</u> at 476. <u>Bell</u> suggests that, in the instant case, the undisputed fact that the juice product's side label accurately reflects the juice product's additional processing is not, standing alone, enough to dismiss plaintiff's ICFA claim as a matter of law.

Conversely, the <u>Bell</u> court observed that there are circumstances where a plaintiff's claim for deceptive advertising is based on unreasonable or fanciful interpretations of a product's labeling, and in such circumstances, "dismissal on the pleadings may well be justified." <u>Id.</u> at 477–78 (collecting cases). The <u>Bell</u> court cited <u>Carrea v. Dreyer's Grand Ice Cream, Inc.</u>, 475 F. App'x 113, 115 (9th Cir. 2012), with approval, in which the court found that it was implausible that a reasonable consumer would interpret "Original Sundae Cone," "Original Vanilla," and "Classic" to suggest that Drumstick is "more wholesome or nutritious than competing products."

Bell, 982 F.3d at 477–78.  Another example is Red v. Kraft Foods, Inc., No. CV 10-1028-GW(AGRx), 2012 WL 5504011 (C.D. Cal. Oct. 25, 2012), in which the court found that the label "Made with Real Vegetables" on a box of crackers did not reasonably suggest that the crackers were "composed of primarily fresh vegetables."  Bell, 982 F.3d at 477–78.  These interpretations are not deceptive as a matter of law.

The court agrees with defendant that plaintiff's interpretation of the "cold pressed juice" label is unreasonable under the circumstances, and the label is not deceptive as a matter of law.  As defendant notes, other courts have rejected the same theory that plaintiff brings in this case, although those courts more heavily relied on the products' packaging disclaimers than this court.  See Campbell v. Drink Daily Greens, LLC, No. 16-CV-7176, 2018 WL 4259978 (E.D.N.Y. Sept. 4, 2018); Campbell v. Freshbev LLC, 322 F. Supp. 3d 330 (E.D.N.Y. 2018); Davis v. Hain Celestial Group, Inc., 297 F. Supp. 3d 327 (E.D.N.Y. 2018).  These courts agree that plaintiff's "cold pressed juice" versus "juice that is cold pressed" distinction is "little more than grammatical sophistry."  See Daily Greens, 2018 WL 4259978, at *3.

Other factors support the court's conclusion.  First, plaintiff acknowledges in her complaint that the juice product is in fact cold pressed, meaning that she is challenging a factually accurate statement.  Moreover, plaintiff provides only conclusory factual allegations to suggest that unspecified "consumers" agree with her subjective interpretation of the label, unlike the plaintiff in Bell, who provided consumer survey results.  See also Lederman v. Hershey Co., No. , 2021-cv-4528, 22 WL 3573034, at *4 (N.D. Ill. Aug. 19, 2022) (rejecting conclusory statements that the reasonable consumer agrees with the plaintiff's interpretation of a food product's label); Karlinski v. Costco Wholesale Corp., No. 1:21-cv-03813, 2022 WL 2867383, at *5 (N.D. Ill. July 21, 2022) ("On a motion to dismiss, the Court need not accept the conclusion

that a reasonable consumer would read the Product's 'chocolate' labeling to imply that the chocolate would be made mostly or entirely of cacao bean ingredients."). Last, plaintiff's interpretation is contrary to the FDA's guidelines for juice manufacturing, as explained in the judicially noticed and publicly available PSA.

The court similarly grants defendant's motion to dismiss plaintiff's claim regarding alleged violations of other consumer fraud statutes that "are similar to the consumer protection statute invoked by Plaintiff."[1] She does not cite any other state statute or explain how these statutes differ from the ICFA. Instead, plaintiff summarily complains that defendant "intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct." Essentially, this claim, and all of plaintiff's claims that the court discusses below, "piggyback" on plaintiff's ICFA claim. Because the court dismisses plaintiff's ICFA claim because it concludes that the juice product's label is not deceptive as a matter of law, it also dismisses plaintiff's consumer fraud multi-state class claim. All plaintiff's claims below fail for the same reason, although they each fail for additional, separate reasons.

The court next considers defendant's motion to dismiss plaintiff's claims for breach of express warranty, breach of implied warranty of merchantability and fitness for a particular purpose, and violation of the Magnuson Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, which plaintiff groups together. According to plaintiff, defendant expressly and impliedly warranted to plaintiff and the putative class members that the juice product was not processed after being cold pressed. She claims that defendant specifically developed, marketed, and labeled the juice product to meet plaintiff and other consumers' needs and desires, "affirm[ing] and promis[ing] that the Product was not processed after being cold pressed."

---

[1] These states include Arkansas, Iowa, Wyoming, Texas, Nebraska, South Dakota, West Virginia, Utah, Idaho, Alaska, and Montana.

These claims are related under Illinois law. Under Illinois law, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." 810 ILCS 5/2-313(1)(a). Moreover, Illinois law provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." 810 ILCS 5/2-314(1). Goods are merchantable when the are fit for the ordinary purposes for which such goods are used. 810 ILCS 5/2-314(2)(c).

Defendant moves to dismiss both of plaintiff's warranty claims because, among other things, plaintiff fails to allege that she provided defendant with pre-suit notice of any alleged breach of warranty. The court agrees with defendant and dismisses plaintiff's claims for both express and implied warranty. Because plaintiff's MMWA claim relies on the same factual allegations, the court also dismisses plaintiff's MMWA claim. See Anderson v. Gulf Stream Coach, Inc., 662 F.3d 775, 781 (7th Cir. 2011) (noting that courts consider the MMWA to practically operate as a gloss on state law breach of warranty claims).

Illinois law requires buyers to provide sellers with pre-suit notice of a warranty claim. 810 ILCS 5/2-607(3)(a) ("[T]he buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."). See also Connick v. Suzuki Motor Co., 174 Ill.2d 482, 492 (1996). The purpose of pre-suit notice is to encourage pre-suit settlement negotiations. See McDonald's French Fries Litigation, 503 F. Supp. 2d 953, 956 (N.D. Ill. 2007). The MMWA similarly "provides that the defendant must be given 'a reasonable opportunity to cure,'" and courts generally incorporate the relevant state law requirements for pre-suit notice for MMWA claims. Jones v. Apple, No. 15-CV-249-NJR-SCW, 2016 WL 11647699, at *3 (S.D. Ill. Aug. 22, 2016), quoting 15 U.S.C. § 2310.

11

There are certain exceptions to the pre-suit notice requirement. For example, direct notice is not required when the seller has actual knowledge of a defect in a particular product. See Connick, 174 Ill.2d at 492. Generalized knowledge is insufficient to establish actual knowledge for the purposes of the exception; instead, the plaintiff must allege that the defendant had actual knowledge of the alleged breach of the particular product purchased by the named plaintiffs in the lawsuit. See Kinman v. Kroger Co., No. 21 C 1154, 2022 WL 1720589, at *3 (N.D. Ill. May 27, 2022). Complaints by regulators, competitors, and other consumers are not enough to suggest actual knowledge, nor is the plaintiff's complaint itself sufficient. Id. at *4.

Defendant argues that plaintiff's warranty claims should be dismissed because plaintiff summarily alleges that she "provided or will provide notice" to defendant about its breach of warranty, which is not specific enough to meet her pleading burden. What matters is not notice "of the facts, which the seller presumably knows quite as well as, if not better than, the buyer, but of buyer's claim that they constitute a breach." Connick, 174 Ill.2d at 494 (emphasis in original) (internal quotations omitted).

Next, the court grants defendant's motion to dismiss plaintiff's claim for negligent misrepresentation. In this claim, plaintiff alleges that defendant breached its non-delegable duty to truthfully represent the juice product, and defendant's representations and omissions resulted in reasonable reliance from consumers like plaintiff and the putative class members. Defendant argues, however, that plaintiff's claim for negligent misrepresentation is barred by the Moorman doctrine. See Moorman Mfg. Co. v. National Tank Co., 91 Ill.2d 69, 86 (1982).

Under the Moorman doctrine, a plaintiff cannot recover under a negligence theory for solely economic damages. Id. at 86. The doctrine is intended to preserve the distinction between tort and contract by denying a remedy in tort to parties whose complaints are rooted in

12

contractual or commercial expectations.  See Kinman v. Kroger Co., No. 21 C 1154, 2022 WL

1720589, at *4 (N.D. Ill. May 27, 2022).  The court agrees that plaintiff's claim falls under the

Moorman doctrine.  She alleges a pure economic loss because her harm is based on her

disappointed commercial expectations following her purchase of the juice product.  See Manley

v. Hain Celestial Grp., Inc., 417 F. Supp. 3d 114, 1120 (N.D. Ill. 2019).

      Moreover, the court rejects plaintiff's argument that her claim falls under an exception to

the Moorman doctrine because defendant holds itself out as having special knowledge and

experience.  Illinois recognizes an exception to the Moorman doctrine for negligent

misrepresentation by "one who is in the business of supplying information for the guidance of

others in their business transactions."  Moorman, 91 Ill.3d at 88–89.  The court rejects plaintiff's

argument that defendant falls under this exception because the court concludes that, to the extent

that defendant provides information to consumers, such information is ancillary to its sale of

tangible goods, and suppliers of tangible goods are typically not covered by the exception.  See

First Midwest Bank, N.A. v. Stewart Title Guar. Co., 218 Ill.2d 326, 339 (2006).

      The court also grants defendant's motion to dismiss plaintiff's fraud claim, which the

court evaluates under the heightened pleading requirement in Rule 9(b).  According to plaintiff,

defendant fraudulently misrepresented and/or omitted "the attributes and qualities" of the juice

product, such as whether the juice product was processed after being cold pressed.  Plaintiff

claims that defendant had actual and constructive knowledge of its falsity and deception, and its

"fraudulent intent is evinced by its knowledge that the Product was not consistent with its

representations."

      To establish a claim for fraud under Illinois law, a plaintiff must show: (1) a false

statement of material fact; (2) the defendant's knowledge that the statement was false; (3) the

13

defendant's intent that the statement induce the plaintiff to act; (4) the plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement. See Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP, 475 F.3d 824, 833–34 (7th Cir. 2007). The court agrees with defendant that plaintiff summarily alleges fraudulent intent. The court also agrees that defendant's knowledge about its product alone is not enough to suggest fraudulent intent. See, e.g., Chiappetta v. Kellogg Sales Co., No. 21-CV-3545, 2022 WL 602505, at *8 (N.D. Ill. Mar. 1, 2022); Rudy v. Fam. Dollar Stores, Inc., 583 F. Supp. 3d 1149, 1159–60 (N.D. Ill. 2022).

Last, the court grants defendant's motion to dismiss plaintiff's claim for unjust enrichment. Plaintiff alleges that defendant "obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members." As defendant notes, however, under Illinois law, "[u]njust enrichment is not a separate cause of action that, standing alone, will justify an action for recovery." Martis v. Grinnell Mut. Reins. Co., 388 Ill. App. 3d 1017, 1024 (2009). Because the court dismisses plaintiff's other claims, her claim for unjust enrichment must fail because it is predicated on these claims. See, e.g., Chiappetta, 2022 WL 602505, at *9.

## CONCLUSION

For the reasons stated above, defendant's request for judicial notice (Doc. 7) is granted. In addition, the court grants defendant's motion to dismiss plaintiff's complaint (Doc. 5).

**ENTER:**

**Robert W. Gettleman**
**United States District Judge**

**DATE: December 9, 2022**

14